PD-0740-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/17/2015 6:04:44 PM
Accepted 7/22/2015 2:45:10 PM
ABEL ACOSTA
CLERK

**CAUSE NO. PD-0740-15**

_____

IN THE COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

_____

THE STATE OF TEXAS

*Respondent/ Appellant*

v.

VANDA VIGIL

*Petitioner/ Appellee*

_____

FROM THE COUNTY COURT AT LAW NUMBER SEVEN
TRIAL COURT NO. 20120C10835

THE COURT OF APPEALS EIGHTH DISTRICT OF TEXAS
NO. 08-13-00273-CR

_____

**AMENDED PETITION FOR DISCRETIONARY REVIEW**

_____

FILED IN
COURT OF CRIMINAL APPEALS

July 22, 2015

ABEL ACOSTA, CLERK

WILLIAM W. NAVIDOMSKIS
Counsel for Petitioner,Vanda Vigil
701 St. Vrain
El Paso, Texas 79902
Tel: (915) 730-8644
Fax: (915) 975-8028
SBN 24053384

defense@weslawyer.com

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**PETITIONER:** Vanda Vigil, represented in Trial and on Appeal by:

William W. Navidomskis
711 Myrtle Street
El Paso, Texas 79901

**RESPONDENT:** The State of Texas represented Appeal by:

Jaime Esparza, District Attorney
Ronald Banerji, Assistant District Attorney
500 E. San Antonio
El Paso, Texas 79901

Trial Counsel:

Jaime Esparza, District Attorney
Alejandro Cuellar, Assistant District Attorney
Sarah Rogness, Assistant District Attorney
Patrick Sloan, Assistant District Attorney
500 E. San Antonio
El Paso, Texas 79901

**TRIAL COURT:** County Court at Law Number Seven, El Paso, Texas, the
Honorable Tom Spieczny, Presiding.

# TABLE OF CONTENTS

IDENTITY OF JUDGE, PARTIES, AND COUNSEL.............................................i

TABLE OF CONTENTS.............................................................ii, iii

INDEX OF AUTHORITIES.........................................................iv, v

STATEMENT REGARDING ORAL ARGUMENT.................................................1

STATEMENT OF THE CASE AND......................................................1

STATEMENT OF PROCEDURAL HISTORY.........................................1

GROUNDS PRESENTED.................................................................2

ARGUMENT.........................................................................3

1.  The court of appeals' ruling that the evidence supporting a conviction is legally sufficient whenever the trier of fact believes the testimony of the victim alone conflicts with decisions of the United States Supreme Court..........................3

2.  By treating the legal sufficiency test of whether "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt" as established whenever the victim's testimony alone is believed by the trier of fact,  the court of appeals has decided a case which conflicts with decisions of the United States Supreme Court and with decisions of this Court...........6

3.  The court of appeals' decision to vacate the trial court's order granting a new trial on legal insufficiency grounds when there were no eyewitnesses connecting Petitioner Vigil to the assault and the State confessed error on this point conflicts with applicable decisions of this Court ...................9

4.  The court of appeals' ruling that a reviewing court can "infer" that a defendant is a primary actor in an assault case involving multiple assailants without identifying the specific conduct the defendant engaged in conflicts with applicable decisions of this Court ...............................................11

5.   The court of appeals' determination that the manner and means paragraphs alleged in a charging instrument which are descriptive of an essential element of the charged offense are mere surplusage conflicts with applicable decisions of this Court..................................................................................................14

6.   The court of appeals departed from the *Jackson v. Virginia* legal sufficiency test by measuring the sufficiency of the evidence against a charge which was hypothetically incorrect because it failed to consider the manner and means allegations of the charging instrument ...........................................................16

7.   The court of appeals' treatment of the manner and means paragraphs of a charging instrument as mere surplusage conflicts with decisions of the U.S. Supreme Court which require a charging instrument to provide a defendant with fair and adequate notice of the offense charged........................................18

PRAYER.......................................................................................................................19

CERTIFICATE OF COMPLIANCE........................................................................21

CERTIFICATE OF SERVICE..................................................................................21

APPENDIX..................................................................................................................22

# INDEX OF AUTHORITIES

**FEDERAL CASES**                                                                      **PAGES**

*Hamling v. United States*, 418 U.S. 87, 117 (1974)..............................................19

*Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979)......................4, 5, 6, 7, 8, 9, 16

*McKoy v. North Carolina*, 494 U.S. 433, 449 (1990)......................................18

*Schad v. Arizona*, 501 U.S. 634 (1991) (plurality opinion)....................................18

**STATE CASES**

*Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011)....................................17

*Durham v. State*, 16 S.W.2d 1092, 1095 (Tex. Crim. App. 1929)..........................13

*Gomez v. State*, No. 08-10-00276-CR, 2012 WL 390970 at *8)........................7, 8

*Hall v. State*, 225 S.W.3d 524, 536 (Tex.Crim.App.2007)....................................15

*Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim. App.2007)........................................7

*Isassi v. State*, 330 S.W.3d 633, at 638 (Tex.Crim. App. 2010)..............................5

*Jefferson v. State*, 189 S.W.3d 305 (Tex.Crim.App. 2006)....................................18

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex.Crim.App. 2011)....................................6

*Malik v. State*, 956 S.W.2d 234 (Tex.Crim.App. 1997)....................................16, 17

*McCuin v. State*, 505 S.W.2d 827, 830 (Tex. Crim. App. 1974)...........................13

*Ransom v. State*, 920 S.W.2d 288, 301-302(Tex. Crim. App. 1994)......................12

*Saldano v. State*, 70 S.W.3d 873, 884 (Tex.Crim.App. 2002).................................11

*Sanchez v. State*, 376 S.W.3d 767, 772 (2012)........................................................16

*Schmidt v. State*, 278 S.W.3d 353 (Tex.Crim.App. 2009).......................................15

*Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007).......................................18

*Williams v. State*, 235 SW 3d 742 (Tex. Crim.App. 2007).........................................7

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner, Vanda Vigil, hereby waives oral argument.

## STATEMENT OF THE CASE

This petition concerns the decision of the court of appeals to vacate and set aside a trial court's order granting a new trial after the Petitioner, Vanda Vigil, was convicted of the criminal offense of Class "A" assault. Vigil based her motion for new trial in part on allegations that the evidence was legally insufficient to support the verdict. After conducting a hearing on Petitioner's motion for new trial and hearing argument from both the State and Defense, the trial court granted Vanda Vigil's motion for new trial.

## STATEMENT OF PROCEDURAL HISTORY

1. The court of appeals handed down its opinion on May 15, 2015.

2. No motion for rehearing was filed.

# QUESTIONS PRESENTED FOR REVIEW

1.  Did the court of appeals err in holding that it is well-established rule or test of legal sufficiency that the victim's testimony alone, if believed, is legally sufficient to support a conviction?

2.  Did the court of appeals err in treating the *Jackson v. Virginia* legal sufficiency test of whether "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt" as established whenever the victim's testimony is believed by trier of fact?

3.  Was it proper for the court of appeals to disregard the trial court's order granting a new trial on legal insufficiency grounds when there were no eyewitnesses connecting Petitioner Vigil to the alleged assault, especially since the State confessed error on this point?

4.  Was it error for court of appeals to rule that a reviewing court can "infer" that a defendant was a primary actor in any assault involving multiple assailants without identifying the specific conduct which was engaged in by that defendant?

5.  Did the court of appeals err by treating the manner and means paragraphs alleged in the charging instrument as mere surplusage, when these allegations were descriptive of an essential element of the charged offense?

6.  Did the court of appeals depart from the *Jackson v. Virginia* legal sufficiency test by measuring the sufficiency of the evidence against a charge which was hypothetically incorrect because it failed to take into consideration the manner and means allegations of the charging instrument?

7.  Can a court of appeals treat the manner and means paragraphs set out in a charging instrument as mere surplusage when decisions of the U.S. Supreme Court which require a charging instrument provide a defendant with fair and adequate notice of the offense charged?

**ARGUMENT**

1.      **The court of appeals' ruling that the evidence supporting a conviction is legally sufficient whenever the trier of fact believes the testimony of the victim alone conflicts with decisions of the United States Supreme Court**

Petitioner, Vanda Vigil, was convicted after a jury trial for Class "A" assault. The complaining witness, Elizabeth Jimenez, testified that she was attempting to exit Coconut's Bar when she was attacked from behind by Petitioner Vigil and Vigil's daughter, Alexis Gonzalez. *RR 3, 10.* Jimenez was asked by the prosecutor, "How did they attack you?" *(Id.)*, and replied:

> As I was leaving, I felt Alexis grabbing for my right breast, I guess, and she started hitting me on my head, and then Vanda got in and started pulling my hair and hitting me on the head. And that's when I fell. *RR 3,10.*

When asked, "Did you fight back at all?", Jimenez replied: "I – I wasn't even able to. I did not even see them attacking me." *Id.* Jimenez testified that right after she fell to the floor a bouncer separated her from her attackers. Jimenez' cousin, Cecilia Archuleta, was also present in Coconuts' bar. *Id.* Like Jimenez, Archuleta failed to link Vigil to the assault and commented that "It all happened so quick." *RR 3, 26-29.*

Stephanie Chavez, a defense witness, testified that she did not see Vigil pull anyone's hair, punch anyone, or engage in any violence. *RR 3, 73.* Petitioner Vigil also took the stand. She testified that she had witnessed Jimenez instigate the matter with her daughter, Alexis Gonzalez, by calling her daughter a "disgusting lesbian"

and then pushing her daughter. *RR 3, 81-82.* Vigil indicated the pushing incident between Jimenez and her daughter resulted in the two falling to the floor, at which time a bouncer intervened and separated them. *RR 3, 83*. Vigil testified that the entire incident "happened like seconds. It was literally seconds" and that she did not strike or injure Jimenez in any way, but only approached "to go help [her] daughter get up, try to separate her, or something." *RR 3, 83*.

On page 6 of its opinion, the court of appeals acknowledges Vigil's contention that the evidence was legally insufficient as to (1) the identity of Vigil as the perpetrator of the Class "A" assault offense; and (2) the causation element of this alleged offense. But on the next page of its opinion, it rejects Vigil's contention that the evidence was legally insufficient as to the identity element:

> We agree with Vigil that, from a direct evidence standpoint, the identity issue ultimately boils down to a he-said, she-said dispute turning on the testimony of a single witness: Jimenez. However, it is well-established that the victim's testimony alone, if believed, is legally sufficient to support a conviction. See *Gomez v. State*, No. 08-10-00276-CR, 2012 WL 390970, at *8 (Tex.App.–El Paso Feb. 8, 2012, no pet.) (not designated for publication).

This analysis conflicts with the analysis adopted by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979), wherein the following legal sufficiency test was created: "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." *Id.*, at 319 (emph. added). Under *Jackson*, a reviewing court is not permitted to forego review of the evidence for legal sufficiency merely because the trier of fact believed the victim of a crime. A reviewing court is obligated to determine whether any rational trier of fact could find all of the essential elements of the offense charged beyond a reasonable doubt.

The court of appeals asserts on page 7 of its opinion that it cannot act as a "thirteenth juror" and cites to case law applicable to a factual sufficiency review. (See *Isassi v. State*, 330 S.W.3d 633, at 638 (Tex.Crim. App. 2010). But this case authority is inapplicable to Vigil's case because Vigil has raised a legal sufficiency challenge to her conviction -- not a factual sufficiency challenge. Under a legal sufficiency analysis, the court of appeals should have found the evidence legally insufficient because Jimenez readily admitted that she did not observe either Vigil or the other alleged assailant strike her or injure her in any way. When asked if she had fought back after being attacked from behind, Vigil testified, "I wasn't even able to. I did not even see them attacking me." *RR 3, 10.*

There is no basis for the court of appeals' holding that if a victim's testimony is believed by the trier of fact, the legal sufficiency of evidence cannot be challenged. Under *Jackson v. Virginia*, no such requirement is imposed. The only inquiry is

whether any rational trier of fact could have found the essential elements of the

offense beyond a reasonable doubt.

**2.      By treating the legal sufficiency test of whether "any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt" as established whenever the victim's testimony alone is believed by the trier of fact, the court of appeals has decided a case which conflicts with decisions of the United States Supreme Court and with decisions of this Court**

On page 6 of its opinion the court of appeals set forth the following test for

determining whether the evidence was legally sufficient to support a conviction:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.

It then cited to *Lucio v. State*, 351 S.W.3d 878, 894 (Tex.Crim.App. 2011) and to

*Jackson v. Virginia*, 443 U.S. 307, 318-319 (1979) as authority for this legal

sufficiency test.  But on the next page of its opinion, it substituted the following legal

sufficiency test for the *Jackson* legal sufficiency test in addressing Vigil's legal

sufficiency challenge to the identity element of the assault offense charged:

"However, it is well-established that the victim's testimony alone, if believed, is

legally sufficient to support a conviction."  As support for this version of the legal

sufficiency test, the court of appeals cited to its unpublished decision in *Gomez v. State*, No. 08-10-00276-CR, 2012 WL 390970 at *8).

The U.S. Supreme Court held that the test of legal sufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, at 319 (1979). In *Jackso*n, the Supreme Court did not attach any significance to whether the eyewitness to an alleged offense is the alleged victim or a mere observer. Nor did it attach any significance to whether or not the trier of fact believed the alleged victim's testimony. It did not attempt to identify any type of evidence which was inherently credible or would withstand a legal sufficiency challenge. Since *Jackson* was decided, the Supreme Court has not once carved an exception to or otherwise modified the legal sufficiency test it created. The test of legal sufficiency is and remains the same.

The same is true of this Court's analysis. Based on the *Jackson* test, it has stated, "...we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 235 SW 3d 742 (Tex. Crim.App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim. App.2007).

Although the court of appeals in this case purports to apply the legal sufficiency test the Supreme Court created in *Jackson v. Virginia*, it actually created an entirely different test. It notes that its earlier unpublished decision in *Gomez v. State*, supra, held that a crime victim's testimony alone, if believed, establishes that the evidence legally sufficient to support a conviction. But the *Gomez* case, like this case, was wrongly decided. The court of appeals' erroneously held that its test (i.e. that the victim's testimony alone, if believed, is legally sufficient to support a conviction) is the same as the *Jackson* legal sufficiency test (i.e. whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.). But it is not.

This point becomes evident when the two tests are applied to the facts of this case. Under the *Jackson v. Virginia* test, Jimenez' initial trial testimony that Vigil hit her on the head and pulled her hair cannot be reconciled with Jimenez' later testimony that she did not observe who struck her from behind. The alleged victim's testimony would be legally insufficient under *Jackson* because no rational trier of fact could find beyond a reasonable doubt that Vigil injured Jimenez. However, Jimenez' trial testimony would meet the court of appeals' legal sufficiency test since the only showing the State had to make to prove it case was that the jury believed Jimenez' testimony that Vigil attacked and hit her.

The flaw in the court of appeals' legal sufficiency test is that it is based on circular reasoning. Under its analysis, establishing that the defendant was convicted would in turn establish that the trier of fact believed the victim's testimony, which in turn would establish that the evidence was legally sufficient. In contrast, the *Jackson v. Virginia* legal sufficiency test is not based on circular reasoning, but on whether any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. Nevertheless, the court of appeals' attempts to meld its legal sufficiency test with that of the *Jackson* test by stating that "it would be rational for a jury to conclude Vigil assaulted Jimenez based on Jimenez's testimony." (See Opinion, p. 9). This attempt fails, however, since there is no aspect of the *Jackson v. Virginia* test which is based on whether the trier of fact believed the alleged victim or for that matter, the testimony of any witness. This Court should therefore reject the court of appeals' determination that "...the victim's testimony alone, if believed, is legally sufficient to support a conviction...." as a misguided legal sufficiency test.

**3.    The court of appeals' decision to vacate the trial court's order granting a new trial on legal insufficiency grounds when there were no eyewitnesses connecting Petitioner Vigil to the assault and the State confessed error on this point conflicts with applicable decisions of this Court**

The court of appeals rejected the trial court's determination that the evidence was legally insufficient without giving a reason.(See opinion, pp. 4-8). It ignored the

difficulty the trial court faced in attempting to harmonize the initial testimony of Jimenez, the complaining witness, with her later testimony. Although Jimenez initially testified that Petitioner Vigil and her daughter Alexis had hit her on the head from her backside and that Vigil had pulled her hair, during further questioning Jimenez admitted that she did not see any of her attackers – her precise words being, "I did not even see them attacking me." *RR 3, 10.* This admission by Jimenez along with the fact that she was the only witness to link Vigil to the alleged assault (a point which the court of appeals concedes) tends to explain why the prosecutor confessed error and told the trial court at the motion for new trial hearing that she did not consider the evidence legally sufficient to support Vigil's conviction of Class "A" assault. The failure of Jimenez to identify a part of her body where she sustained injury or suffered bodily pain also presented legal sufficiency issue.

The court of appeals disregarded these deficiencies in the evidence, however. In particular, it overlooked Jimenez' testimony that she did not see her attackers while she was being attacked from the rear. Instead, based on the assumption that the prosecutor confessed error, it vacated the trial court's order granting Vigil a new trial. In doing so, it failed to consider the important admission by Jimenez that she did not see any of her attackers during the attack. It also ignored the rule of this Court that reviewing courts are to grant great weight to the representations of prosecutors in

confessing error. *Saldano v. State*, 70 S.W.3d 873, 884 (Tex.Crim.App. 2002). Further, the court of appeals disregarded the rule that

> appellate courts [are to] uphold the trial court's ruling on appeal absent an "abuse of discretion." That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991).

Although Jimenez' testimony that she did not see her attackers might not be a concern to the court of appeals, it should have been a concern. Clearly, the trial court acted within a reasonable zone of disagreement by finding Jimenez' testimony of not having observed the persons who assaulted her dispositive of the legal sufficiency issue –- especially since no other eyewitness identified Vigil as participating in the assault.[1] The court of appeals therefore improperly disregarded the trial court's ruling and also failed to give respect the State's decision to confess error on this legal sufficiency point.

**4.      The court of appeals' ruling that a reviewing court can "infer" that a defendant is a primary actor in an assault case involving multiple assailants without identifying the specific conduct the defendant engaged in conflicts with applicable decisions of this Court**

In the third point for review of her brief to the court of appeals, Petitioner Vigil argued that the State failed to prove up its case because it had limited its

---

[1]See page 7 of the Opinion, which states, "We agree with Vigil that, from a direct evidence standpoint, the identity issue ... turn[s] on he testimony of a single witness: Jimenez."

prosecution theory to proving that Vigil was a primary actor, rather than a party

to the offense. However, the court of appeals rejected this argument by Vigil

based on the following reasoning:

> Vigil correctly notes that the State did not charge Vigil under law of the parties, and that as such, Vigil cannot be held criminally liable for injuries caused by Alexis Gonzalez. Even so, this is not fatal. Jimenez testified that both Vigil and Gonzalez attacked her. Assuming it believed her testimony, a reasonable jury could infer that because Jimenez said both women attacked her, and because she suffered injuries, at least some of the injuries could be attributed to Vigil.

Under Texas law, the State was required to prove that the defendant was

either a primary actor or party to the Class "A" assault offense alleged. *Ransom*

*v. State*, 920 S.W.2d 288, 301-302(Tex. Crim. App. 1994). The court of appeals

agreed that Vigil could not be found guilty as a party to the offense. However, it

nonetheless concluded that Vigil was still guilty as a primary actor "because

Jimenez said both women attacked her, and because she suffered injuries, at least

some of the injuries could be attributed to Vigil." In so ruling, the court of appeals

excused the State from having to prove how Vigil injured Jimenez.

Vigil has been unable to find a single Texas case where a court has "inferred"

that a defendant, acting with one or more other persons, was found guilty as a

principal or primary actor without some evidence of how that defendant injured

the victim of the alleged crime. In *McCuin v. State*, 505 S.W.2d 827, 830 (Tex. Crim. App. 1974), this Court held that to determine whether appellant was a primary actor or was a party to the offense, the trial court first had to remove from consideration the acts and conduct of the non-defendant actor. Then, if the evidence of the conduct of the defendant then on trial would be sufficient, in and of itself, to sustain the conviction, no submission of the law of principals was required. This carried forward the rule it had previously established in *Durham v. State*, 16 S.W.2d 1092, 1095 (Tex. Crim. App. 1929) (holding "[w]hen the evidence shows that the accused on trial was a principal actor in the commission of the offense, no charge on principals would be necessary, although the proof may also disclose that in doing the criminal act another took an equal part.").

None of this caselaw has any continued validity if a defendant can be labeled a primary actor in a multiple assailant case, without the State having to specify what conduct that defendant engaged in, vis a vis the other defendant(s) involved in the offense. Under the court of appeals' analysis, there is no longer any distinction between parties and primary actors or principals since the causation element of a criminal offense can be inferred. Review should therefore be granted to establish that a defendant's "primary actor" status cannot be simply "inferred" in a criminal case involving multiple assailants.

**5.** **The court of appeals' determination that the manner and means paragraphs alleged in a charging instrument which are descriptive of an essential element of the charged offense are mere surplusage conflicts with applicable decisions of this Court**

Elizabeth Jimenez, the complaining witness, was asked only one question regarding whether she suffered pain. *RR 3, 32.* During her second redirect examination, the prosecutor asked her: "When you were attacked, did you feel pain?" *Id.* Jimenez' response to this question was, "Yes, I did." *Id.* Jimenez did not indicate where she felt pain. Nor did she identify a particular blow from Vigil which caused her to suffer pain. *Id.* Nevertheless, the court of appeals rejected her legal sufficiency challenge to the "bodily injury" element of the assault offense charged by ruling:

> Jimenez testified that Vigil hit her head and pulled her hair, and that she felt pain during the attack. This testimony is sufficient to establish that Jimenez suffered bodily injury.

The court of appeals thus ignored Vigil's argument that the evidence was legally insufficient to prove any of the manner and means allegations of the information, i.e. that Jimenez suffered pain when her hair was pulled (paragraph A); that Jimenez sustained bodily injury after being thrown or pushed to the ground (paragraph C); or that Jimenez sustained bodily injury by being hit on the head (paragraph D).[2] The

---

[2]Paragraph B of the information, which alleged that Vigil caused bodily injury to Jimenez by grabbing or squeezing Jimenez' breast, was abandoned by the State at the start of the trial.

court of appeals instead held that Jimenez' testimony that she felt pain during the alleged attack was sufficient to prove the assault offense alleged, even though no parties charge was submitted to the jury.

In *Schmidt v. State*, 278 S.W.3d 353 (Tex.Crim.App. 2009), the Court of Criminal Appeals cited to prior caselaw as establishing that where a fact alleged in an indictment or information is descriptive of an essential element of the offense, that fact is not mere surplusage and must be proven by the State as part of its burden of proof. In *Schmidt*, the State argued that the "striking" allegation was not required to be pled and is unnecessary surplusage that is "merely descriptive of an element but not statutorily required." *Id.*, at 359. The Court held, however, that "The State's argument in this case that the non-statutory, manner and means allegation of 'striking' should not be considered a 'fact required' to establish the charged retaliation-by-threat offense is contrary to our decision in [ *Hall v. State*, 225 S.W.3d 524, 536 (Tex.Crim.App.2007)]. In *Hall,* the Court of Criminal Appeals considered the non-statutory, manner and means allegation of "shooting the individual with a gun" to be a "fact required" to establish the charged murder offense. *Id.* Accordingly, the Court of Criminal Appeals in *Schmidt* explained that facts which describe an element of an offense must be proven up because these facts bear upon the defendant has been given fair and adequate notice of the offense charged:

...that appellant could have been convicted of this retaliation-by-threat offense under an indictment omitting the "to-wit: striking" allegation does not necessarily make this allegation unnecessary surplusage. We note that this Court's decision in *Doyle v. State* would support a holding that a defendant's timely motion to quash such an indictment would require the State to provide the "to-wit: striking" allegation for purpose of providing adequate notice. See *Doyle v. State*, 661 S.W.2d 726, 729-31 (Tex.Cr.App. 1983)(defendant's timely motion to quash a "nonfundamentally defective" retaliation-by-threat indictment entitled the defendant to notice of "how and to whom the threat was made"). *Id.*

This Court should reject the court of appeals' determination that the State need only prove Vigil caused bodily injury and that it could ignore the manner and means allegations of the information in its legal sufficiency analysis.

**6.      The court of appeals departed from the *Jackson v. Virginia* legal sufficiency test by measuring the sufficiency of the evidence against a charge which was hypothetically incorrect because it failed to considering the manner and means allegations of the charging instrument**

The Court of Criminal Appeals in *Malik v. State*, 956 S.W.2d 234 (Tex.Crim.App. 1997) altered the legal sufficiency analysis previously applied in Texas, which had been to compare the legal sufficiency of the evidence against the actual charge given to the jury. See *Sanchez v. State*, 376 S.W.3d 767, 772 (2012). In *Malik*, the Court of Criminal Appeals held that the legal sufficiency of the evidence would be determined by comparing the evidence adduced at trial against

a hypothetically correct charge. *Id.*, at 230. In *Adames v. State*, 353 S.W.3d 854 (Tex. Crim. App. 2011), the Court rejected the argument that the *Malik* sufficiency standard is a purely state law standard that is foreign to federal constitutional norms and does not apply to a constitutional evidentiary-sufficiency review. *Id.*, at 860. It noted that under *Malik* "such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, at 240.

In Vigil's case, the court of appeals did not base its analysis on the allegations contained in the four manner-and-means paragraphs of the charging instrument. It held that because Jimenez testified that both Vigil and Gonzalez attacked her, "a reasonable jury could infer that Jimenez suffered injuries, at least some of the injuries could be attributed to Vigil." It thus relied on a hypothetically incorrect charge analysis to affirm Vigil's conviction. Vigil has been unable to find a single decision from any federal court which has held that legal sufficiency to be measured against a generic offense, which fails to take into consideration the manner and means allegations of a charging instrument. Review of this point is therefore warranted.

**7.** **The court of appeals' treatment of the manner and means paragraphs of a charging instrument as mere surplusage conflicts with decisions of the Supreme Court which require a charging instrument to provide a defendant with fair and adequate notice of the offense charged**

While the United States Supreme Court has determined that "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict" and that an indictment can allege different manner and means of committing a crime without rendering the indictment duplicitous, it has never dispensed with or treated manner and means allegations as mere surplusage. *Schad v. Arizona*, 501 U.S. 634 (1991) (plurality opinion); *McKoy v. North Carolina*, 494 U.S. 433, 449 (1990). The Supreme Court's analysis in *Schad* is consistent with this Court's analysis in *Jefferson v. State*, 189 S.W.3d 305 (Tex.Crim.App. 2006) and *Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007), which likewise recognizes that manner and means allegations in an indictment are not mere surplusage. Thus, even where different jurors can agree that the offense alleged was committed by different manner and means, neither court has ever treated manner and means allegations in an indictment or information as something which can be ignored altogether.

The court of appeals went well beyond the Supreme Court's analysis of the "unanimity" issue presented in *Schad v. Arizona*, however. It treated the the

manner and means allegations of the information in Vigil's case as mere surplusage in conducting its legal sufficiency analysis. It determined that the evidence was legally sufficient to support Vigil's conviction for assault so long as the evidence proved Vigil had committed the assault offense alleged by any means. The Supreme Court has held "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

The court of appeals' analysis thus dispenses with both requirements of *Hamling*, supra, but most particularly the requirement that the charge fairly inform the defendant of the offense charged. By holding that the State need only prove a generic "assault" offense rather than the specific "assault" offense alleged in the information – it dispensed with the fair and adequate notice requirement of *Hamling v. United States*, 418 U.S. 87, 117 (1974). This Court should address whether manner and means allegations of a charging instrument which describes an offense element can be treated as mere surplusage when they provide notice of the offense charged.

## PRAYER

WHEREFORE, premises considered, Appellant Vigil respectfully requests the Court of Criminal Appeals to grant the amended petition for discretionary review in this case and order the parties to brief each of the issues presented for review.

Respectfully submitted,

   */s/   William W. Navidomskis*
WILLIAM W. NAVIDOMSKIS
Attorney for Appellant
701 N. St. Vrain
El Paso, Texas 79902
Tex. Bar No. 24053384
Tel. (915) 730-8644
Fax (915) 975-8028
defense@weslawyer.com

**CERTIFICATE OF COMPLIANCE WITH RULE 9.4**

This amended petition for discretionary review complies with the type-volume limitations of 9.4 and contains 4,373 words, excluding the parts of the petition exempted by 9.4(1); and this petition for discretionary review complies with the typeface requirements of 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Corel Word Perfect in Times New Roman, 14-point.

*/s/   William W. Navidomskis*
WILLIAM W. NAVIDOMSKIS

**CERTIFICATE OF SERVICE**

This is to certify that on July 17, 2015, a true and correct copy of the Amended Petition for Discretionary Review was delivered to District Attorney Office: District Attorney Jaime Esparza, 500 E. San Antonio, El Paso, Texas 79901 in accordance with the Texas Rules of Civil Procedure.

*/s/   William W. Navidomskis*
WILLIAM W. NAVIDOMSKIS

# APPENDIX

1.      Opinion and Judgment

2.      Information

1. **Opinion and Judgment**



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| THE STATE OF TEXAS, | | No. 08-13-00273-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | County Court at Law No. 7 |
| | § | |
| VANDA VIGIL, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20120C10835) |
| | § | |

**O P I N I O N**

The State appeals the trial court's order granting Vanda Vigil a new trial following her conviction on one count of misdemeanor assault. We reverse.

**BACKGROUND**
*Factual History*

On August 17, 2011, Vigil, her daughter Alexis Gonzalez, and Alexis' then-girlfriend Stephanie Chavez were present at Coconuts Bar in Central El Paso. Elizabeth Jimenez[1], the complaining witness and Alexis' step-sister, testified at trial that she and her cousin Ceci Archuleta came to Coconuts that night to celebrate Archuleta's twentieth birthday. As they entered the bar, Jimenez saw Vigil and Gonzalez. Jimenez stated that Archuleta's boyfriend,

---

[1] Jimenez's name is spelled "Jimenez" and "Jiminez" in the record, because the actual spelling of her name is unclear, we will refer to her as "Jimenez."

who was with the group, commented on the fact that Vigil and Gonzalez seemed to be staring at them. A bartender turned Archuleta away for not having her identification and for not being over age twenty-one, so she, her boyfriend, and Jimenez decided to leave.

As they left the bar, the group passed in front of Vigil, Gonzalez, and Chavez. At this point, the testimony diverges. Jimenez claimed that as she was trying to exit the bar, Vigil and Gonzalez stopped her and attacked, with Vigil pulling Jimenez's hair. Vigil and Chavez disputed Jimenez's account of events. Chavez testified that Jimenez approached Gonzalez and that the two exchanged words. According to Vigil, Jimenez called Gonzalez a "disgusting lesbian." Jimenez and Gonzalez began to fight and fell to the floor. Vigil maintained at trial that she left her chair to try and break up the fight, but that before she could reach Jimenez and Gonzalez, a bouncer arrived and separated the women. Chavez also testified that she did not see Vigil punch or hit Jimenez.

### *Procedural History*

Following trial, the jury found Vigil guilty of assault. The trial court sentenced Vigil to ninety days in jail, suspended the sentence, placed her on probation for ninety days, and credited her with time served. During the course of the sentencing hearing, the trial court remarked:

> I'm in a very difficult situation. If this case would have been tried to me, I believe I would have found you not guilty, ma'am.
> I found your testimony to be somewhat credible. I found the other side to be somewhat credible. I did have reasonable doubt.
> But under our system, a jury makes those determinations. This jury did make that determination. And unless those jury verdicts are set aside, I need to respect and honor those determinations.

Vigil subsequently moved for a new trial on actual innocence, legal insufficiency, and interest of justice grounds. The trial court granted Vigil a new trial. The State appealed.

### DISCUSSION

2

In its sole appellate issue, the State contends that the trial court abused its discretion by ordering a new trial and thereby substituting its judgment for that of the jury when legally sufficient evidence underpinned Vigil's conviction. Vigil counters that the evidence was legally insufficient to establish her identity as the assailant or any injury to the victim, and, alternatively, that the trial court's new trial order is justified by defects in the indictment.

**I.**
***Confession of Error***

As a threshold matter, Vigil also maintains that the State confessed error during the new trial hearing when the prosecutor commented that she did not personally believe Vigil's guilt could be established by proof beyond a reasonable doubt. As such, she is entitled to acquittal and the State should be "estopped" from further proceedings. Vigil bases her claim on the following colloquy between the prosecutor and the trial court:

THE COURT: [...] Okay. Let me hear from the State.

.          .          .

[PROSECUTOR]: Before this motion for a new trial was filed, even you and I had a conversation. I agree with you. I don't -- if I had been a juror, I would have thought there was reasonable doubt and would have found her not guilty as well.
        That said, I think the crux here is that I wasn't a juror. The six who were chosen, after voir dire was conducted, were. And it was their job to weigh the facts, weigh the credibility of the witnesses and determine whether or not they saw reasonable doubt. So I just wanted to say -- I don't know. I just wanted to say that . . . .

THE COURT: Let me ask you a question which will be a difficult question for you, but I think it is a question I need answered.

You are an officer of the court.

[PROSECUTOR]: Right.

THE COURT: Your oath as a district attorney is that you are to seek justice.

[PROSECUTOR]: Right.

3

THE COURT: Not to try to just get every notch under your belt and get every conviction, but to seek justice. So as someone who has taken that oath, what is your position with regard to this Motion?

[PROSECUTOR]: Before -- I think that's actually a simple question. Before every trial, even if I'm second-chairing, I evaluate whether or not there's probable cause to go forward. If there's not, it's easy for me to dismiss. And here I thought there was definitely probable cause. That's why --

THE COURT: No one is doubting your decision to go forward and present the case.

[PROSECUTOR]: Right.

THE COURT: The question I am asking is much more narrow, and it is: Right now, today, with the evidence that was presented and with the Motion that is before the Court, what is your position as someone who tried this case and heard all the evidence with regard to this Motion?

[PROSECUTOR]: I argue that the verdict should stand --

THE COURT: All right.

[PROSECUTOR]: -- because I wasn't a juror, Your Honor.

THE COURT: All right.

We question whether the prosecutor's comment that "if [she] had been a juror, [she] would have thought there was reasonable doubt and would have found her not guilty as well" constituted an actual confession of error. Even if it did, the State's confession of error is not dispositive. We grant great weight to the representations of prosecutors in confessing error, "[b]ut such a confession does not relieve this Court of the performance of the judicial function." *Saldano v. State*, 70 S.W.3d 873, 884 (Tex.Crim.App. 2002)(citing *Young v. United States*, 315 U.S. 257, 258-59, 62 S.Ct. 510, 511, 86 L.Ed. 832 (1942)). "[O]ur judicial obligations compel us to examine independently the errors confessed" on their merits. *Id*. at 884. Assuming *arguendo* that the comment did constitute confession of error, that alone does not preclude our

4

review of the trial court's decision or automatically entitle Vigil to acquittal by estoppel. To the extent she argues otherwise, we overrule Issue Five. We must still review the alleged error. Bearing these things in mind, we proceed.

## II.
### *New Trial Order*
### New Trials: Standard of Review and Applicable Law

We review the trial court's new trial ruling for abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex.Crim.App. 2007).

A trial judge "cannot grant a new trial on mere sympathy, an inarticulate hunch, or simply because he personally believes that the defendant is innocent or received a raw deal." *Id*. at 907 [Internal quotation marks omitted]. Instead, even where a defendant urges a new trial on interest of justice grounds, "[a] motion for a new trial, whether for guilt or punishment, requires a valid legal claim." *State v. Thomas*, 428 S.W.3d 99, 107 (Tex.Crim.App. 2014). "To grant a new trial for a non-legal or legally invalid reason is an abuse of discretion." *Herndon*, 215 S.W.3d at 907 (contrasting Texas law with federal appellate precedent).

The trial court must grant the defendant a new trial for any of the reasons articulated in TEX.R.APP.P. 21.3, including "when the verdict is contrary to the law and the evidence." TEX.R.APP.P. 21.3(h). The trial court retains the discretionary power to grant a new trial for any legal reason not listed in TEX.R.APP.P. 21.3. While "[t]he defendant need not establish reversible error as a matter of law before the trial court may exercise its discretion in granting a motion for new trial[,] . . . trial courts do not have the discretion to grant a new trial unless the defendant demonstrates that his first trial was seriously flawed and that the flaws adversely affected his substantial rights to a fair trial." *Herndon*, 215 S.W.3d at 909. The Court of Criminal Appeals has declined to set bright-line rules for the appellate courts to use in assessing

5

the trial court's exercise of discretion, but the Court has suggested that "a trial court would not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure." *Herndon*, 215 S.W.3d at 909.

## A.
### Legal Insufficiency

In her first three responses to the State's appeal, Vigil argues we can uphold the new trial grant because the State failed to prove beyond a reasonable doubt that (1) she was actually the person that attacked Jimenez, (2) that Jimenez suffered bodily injury, or (3) that she and not a third party caused any of Jimenez's injuries. We disagree.[2]

"In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt." *Lucio v. State*, 351 S.W.3d 878, 894 (Tex.Crim.App. 2011); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). "Our role on legal sufficiency review is not to usurp the jury and replace its verdict with our own; instead, we serve as a procedural safeguard, ensuring that whatever verdict the jury rendered comports with due process." *Urias v. State*, No. 08–12–00090–CR, 2014 WL 1259397, at *2 (Tex.App.--El Paso Mar. 26, 2014, no

---

[2] We note that Vigil presented an actual innocence claim before the trial court. She does not address it in her brief. As the State correctly points out in its brief, actual innocence claims require new evidence not originally presented to the trial court that would have established innocence at trial. *Ex parte Garcia*, No. 08-11-00232-CR, 2013 WL 1182211, at *5-*6 (Tex.App.--El Paso Mar. 20, 2013, no pet.)(not designated for publication). Since Vigil did not present new evidence in her motion, we considered her actual innocence claims as having merged with her legal sufficiency claim and review the trial evidence under the legal sufficiency standard.

pet.)(not designated for publication). "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." [Internal quotation marks omitted]. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010). "We do not overturn a verdict unless it is irrational or unsupported by proof beyond a reasonable doubt." *Smallwood v. State*, No. 08-12-00215-CR, 2014 WL 4269155, at *3 (Tex.App.--El Paso Aug. 29, 2014, pet. ref'd)(not designated for publication).

### 1.
### *Identity*

First, we turn to the issue of identity. Vigil argues that the testimony of both State witnesses who identified her as the attacker is legally insufficient to uphold her conviction. Specifically, Vigil maintains that Archuleta never actually saw Vigil touch or hit Jimenez, and that Jimenez's testimony is not credible. We agree with Vigil that, from a direct evidence standpoint, the identity issue ultimately boils down to a he-said, she-said dispute turning on the testimony of a single witness: Jimenez. However, it is well-established that the victim's testimony alone, if believed, is legally sufficient to support a conviction. *See Gomez v. State*, No. 08-10-00276-CR, 2012 WL 390970, at *8 (Tex.App.--El Paso Feb. 8, 2012, no pet.)(not designated for publication). Since we no longer possess the power to sit as the "thirteenth juror" and re-weigh the evidence on a factual sufficiency review in a criminal case, *see Isassi*, 330 S.W.3d at 638, and since it would be rational for a jury to conclude Vigil assaulted Jimenez based on Jimenez's testimony, we cannot overturn the jury's implicit finding on the issue of identity for legal insufficiency.

### 2.
### *Bodily Injury*

Second, Vigil contends there is legally insufficient evidence to establish Jimenez suffered

bodily injury. Vigil points out that Jimenez's testimony that her lip and knees bled after the attack is belied by video and photographic evidence in the record.[3] In a video statement given after the fight, Jimenez appears composed and does not show any visible signs of injury to her face. Likewise, pictures of her body, including her legs and knees, fail to show any blood or visible injuries. Even so, visible evidence of physical injury is not necessary to sustain an assault charge. Bodily injury is defined as "*physical pain*, illness, or any impairment of physical condition[,]" [Emphasis added], TEX.PENAL CODE ANN. § 1.07(a)(8)(West Supp. 2014), and can encompass "even relatively minor physical contacts so long as they constitute more than mere offensive touching." [Internal quotation marks omitted]. *Wingfield v. State*, 282 S.W.3d 102, 105 (Tex.App.--Fort Worth 2009, pet. ref'd). Jimenez testified that Vigil hit her head and pulled her hair, and that she felt pain during the attack. This testimony is sufficient to establish that Jimenez suffered bodily injury.

*3.*
*Causation*

Finally, Vigil also maintains that even if identity and bodily injury were proven beyond a reasonable doubt, the State failed to prove that Jimenez's injuries were caused by Vigil and not Alexis Gonzalez. Vigil correctly notes that the State did not charge Vigil under law of the parties, and that as such, Vigil cannot be held criminally liable for injuries caused by Alexis Gonzalez.

Even so, this is not fatal. Jimenez testified that both Vigil and Gonzalez attacked her. Assuming it believed her testimony, a reasonable jury could infer that because Jimenez said both women attacked her, and because she suffered injuries, at least some of the injuries could be attributed to Vigil. This point is without merit.

---

[3] We may review "indisputable" video evidence in the record *de novo*. *State v. Duran*, 396 S.W.3d 563, 570-71 (Tex.Crim.App. 2013).

## B.
## Indictment Defects

Finally, Vigil raises two separate complaints about defects in the indictment. First, Vigil complains that the State's prosecuting attorney gave a materially inaccurate reading of the indictment at the trial's inception by alleging she caused Jimenez bodily injury "by pushing or *struggling* Elizabeth Jimenez to the ground" when the criminal information actually alleged that she caused bodily injury "by pushing or *throwing* Elizabeth Jimenez to the ground[.]" Second, Vigil argues that the State spelled Jimenez's surname two different ways in the information— "Jimenez" and "Jiminez"— and that this constitute a fatal variance between the information and what the State proved at trial.

We note, and Vigil concedes, that she did not present either of these grounds to the trial court in her motion for a new trial. However, Vigil maintains we can address these points because they concern errors that touch on waiveable rights. *See Turner v. State*, 860 S.W.2d 147, 150-51 (Tex.App.--Austin 1993, pet. granted), *rev'd on other grounds*, 897 S.W.2d 786 (Tex.Crim.App. 1995). We disagree. In reviewing the new trial grant, "we look to the grounds pleaded by the movant in the motion and determine whether any of these grounds provide a basis for granting the new trial." *State v. Fury*, 186 S.W.3d 67, 73 (Tex.App.--Houston [1st Dist.] 2005, pet. ref'd). Because the trial court has no power to order a new trial order *sua sponte*, and because these arguments were never presented to the trial court, they could not form the basis for the new trial grant. *See State v. Varkonyi*, No. 08-06-00262-CR, 2008 WL 821580, at *3 (Tex.App.--El Paso Mar. 27, 2008, pet. dism'd)(not designated for publication). To the extent Vigil is attempting to raise these issues on cross-appeal, we note that a defendant's cross-points are not cognizable on State's appeal. *State v. Barron*, No. 08-12-00245-CR, 2012 WL 5515678 (Tex.App.--El Paso Nov. 14, 2012, no pet.)(mem. op., not designated for publication)(dismissing

9

defendant's cross-appeal where State appealed new trial grant); *cf. Sanchez v. State*, No. 08-11-00137-CR, 2014 WL 2810479 (Tex.App.--El Paso June 20, 2014, pet. ref'd)(not designated for publication)(separately addressing defendant's noticed appeal following disposition of a state's appeal of a new trial grant); *see also State v. Wilkins*, No. 05-12-00154-CR, 2014 WL 465820, at *7 (Tex.App.--Dallas Feb. 4, 2014, pet. ref'd)(not designated for publication)(court of appeals had no jurisdiction to entertain defendant's cross-appeal points on state's appeal, even when defendant properly noticed appeal, because the new trial order the State attacked reversed the final judgment the defendant sought to attack).

In sum, any defects in the indictment could not have formed the basis of the new trial grant because Vigil never presented those grounds to the trial court, and her complaints about the indictment as cross-points are not cognizable at this stage. Further discussion of these issues is unnecessary to the resolution of this appeal. TEX.R.APP.P. 47.1.

## CONCLUSION

Vigil failed to advance any meritorious legal claims in support of her motion for a new trial. As such, the trial court abused its discretion in granting the new trial. Issue One is sustained. We reverse the trial court's order granting the motion for new trial and reinstate the trial court's judgment of conviction.


May 15, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)


10



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-13-00273-CR |
|  | § |  |
| Appellant, | § | Appeal from the |
|  | § |  |
| v. | § | County Court at Law No. 7 |
|  | § |  |
| VANDA VIGIL, | § | of El Paso County, Texas |
|  | § |  |
| Appellee. | § | (TC# 20120C10835) |
|  | § |  |

**J U D G M E N T**

The Court has considered this cause on the record and concludes there was error in the judgment. We therefore reverse the trial court's order granting the motion for new trial and reinstate the trial court's judgment of conviction, in accordance with our opinion. This decision shall be certified below for observance.

IT IS SO ORDERED THIS 15TH DAY OF MAY, 2015.

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

# 2. Information

D.A. CONTROL #12-10345　　　　PID: 1757605　NCIC: 13990001
　　　　　　　　　　　　　　　　INFORMATION　　*20100C 10835*

　　　　　　　　　　　　　　　　　　　　　　*CC7*

OFFENSE: ASSAULT CAUSES BODILY INJ

STATE OF TEXAS
VS.
VANDA VIGIL

D.O.B.: 07/10/68　　　　　　　ADDRESS:　210 WEST REDD RD 708
WARRANT: M12W7593　　　　　　　　　　　EL PASO, TX 79932
AGENCY: EL PASO POLICE

( ) CAPIAS REQUESTED

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

I, KENNETH GIBSON_____, ASSISTANT DISTRICT ATTORNEY IN AND FOR THE COUNTY OF EL PASO, STATE OF TEXAS, PRESENT TO THE COUNTY COURT AT LAW NO. 1 OF EL PASO COUNTY, TEXAS, IN AND FOR SAID COUNTY, AT ITS JULY TERM, A.D. 2012, THAT ON OR ABOUT THE 17TH DAY OF AUGUST, 2012 AND BEFORE THE FILING OF THIS INFORMATION IN SAID COUNTY OF EL PASO, STATE OF TEXAS, VANDA VIGIL, HEREINAFTER REFERRED TO AS DEFENDANT,

PARAGRAPH A
DID THEN AND THERE INTENTIONALLY, KNOWINGLY OR RECKLESSLY CAUSE BODILY INJURY TO ELIZABETH JIMENEZ BY PULLING ELIZABETH JIMINEZ'S HAIR WITH THE DEFENDANT'S HAND,

PARAGRAPH B
DID THEN AND THERE INTENTIONALLY, KNOWINGLY OR RECKLESSLY CAUSE BODILY INJURY TO ELIZABETH JIMENEZ BY GRABBING OR SQUEEZING ELIZABETH JIMINEZ'S BREAST WITH THE DEFENDANT'S HAND,

PARAGRAPH C
DID THEN AND THERE INTENTIONALLY, KNOWINGLY OR RECKLESSLY CAUSE BODILYINJURY TO ELIZABETH JIMENEZ BY PUSHING OR THROWING ELIZABETH JIMENEZ TO THE GROUND,

PARAGRAPH D
DID THEN AND THERE INTENTIONALLY, KNOWINGLYOR RECKLESSLY CAUSE BODILY INJURY TO ELIZABETH JIMENEZ BY STRIKING ELIZABETH JIMENEZ ABOUT THE HEAD WITH THE DEFENDANT'S HAND,

　　　AGAINST THE PEACE AND DIGNITY OF THE STATE.

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　ASSISTANT DISTRICT ATTORNEY
　　　　　　　　　　　　　　FOR EL PASO COUNTY,
　　　　　　　　　　　　　　STATE OF TEXAS

FILED IN THE COUNTY COURT AT LAW NO. 1 OF EL PASO COUNTY, TEXAS
ON _10/10/2012_ AT _12:20_ O'CLOCK, _P_ M._

　　　　　　　　　　_____
　　　　　　　　　　DEPUTY COUNTY CLERK
　　　　　　　　　　EL PASO COUNTY, TEXAS

SQ